Emmet Jay Schwartzman, Carlton Fields, Anthony Harris Pelle, Miami, FL, for defendant.

Gary **CHAVANNES**, Plaintiff,

v.

**PROTECTIVE LIFE INSURANCE COMPANY**, a Tennessee corporation, f/k/a Inter–State Assurance Company, Defendant.

No. 05–21462–CIV.

United States District Court, S.D. Florida.

Jan. 24, 2006.

*ORDER*

GARBER, United States Magistrate Judge.

THIS CAUSE is before the Court on Defendant's Motion to Compel Production of Funeral Video (D.E.# 36). On January 24, 2006, the Court held a hearing regarding this Motion. For the reasons set forth below, Defendant's Motion is GRANTED.

Plaintiff commenced this action to recover the $100,000 death benefit from an insurance policy which Philomene Milien purchased in 1997. Plaintiff claims that Ms. Milien died in Haiti approximately seven months after she procured the policy and that Plaintiff was the beneficiary of the policy,[1] but that Defendant

---

1. In the Complaint, Plaintiff alleged that he was Philomene Milien's husband. *See* Compl. ¶ 9. In response to Defendant's request for production of documents to prove he was her husband, however, he wrote: "Philomene Milien and I

has refused to pay Plaintiff the death benefit because: (1) Ms. Milien allegedly made a material misrepresentation on her life insurance application when she failed to disclose that she traveled to Haiti on a regular basis; and (2) Plaintiff allegedly has not offered sufficient proof that Ms. Milien died while the policy was in effect. The following alleged evidence raises questions about the veracity of the claim that Ms. Milien passed away in 1998: Ms. Milien died at age 35 with no previous history of poor health; at that time, her life insurance policy had been in effect for only approximately seven months; at least three different death certificates, none of which was signed by a doctor, were issued in the months following her alleged death; none of the death certificates stated a cause of death; there was no autopsy; there is no marked grave; and the casket used at her funeral may have been empty.

On December 13, 1999, Plaintiff signed a written statement regarding Philomene Milien's alleged death in which he wrote, in part: "A video of the funeral was taken." Therefore, on September 6, 2005, Defendant served on Plaintiff requests for production which included requests for "[p]hotographs, videotapes, films, audiotapes and/or any other visual and/or sound recording of Philomene Milien's funeral and documents referring to or regarding who took the photographs and or made the visual/sound recording(s) ...," and "[p]hotographs, videotapes, audiotapes and/or any other visual and/or sound recording of Philomene Milien's internment."

Plaintiff originally responded to those requests for production on October 17, 2005, and Plaintiff filed amended responses on November 14, 2005. Plaintiff's appears to have amended his responses at least in part because on November 3, 2005, Defendant's counsel sent Plaintiff's counsel a letter detailing insufficiencies in Plaintiff's responses, including a failure to provide a privilege log.

In the original and amended responses to both requests, Plaintiff wrote, in part: "Photographs and videotapes of Philomene Milien's funeral are objected to on the basis of work product. It is not decided if and which

films and videotapes will be used if any, at trial."

Regarding the first request, related to Ms. Milien's funeral, Plaintiff also wrote in its original (October 17, 2005) response: "Without waiving such objection, Plaintiff knows of one video and is searching for the cassette." Regarding the second request, related to Ms. Milien's interment, Plaintiff also wrote in its original (October 17, 2005) response: "Without waiving such objection, there are none in Plaintiff's possession at this time."

In Plaintiff's amended (November 14, 2005) response, he also wrote the following regarding the requests related to Ms. Milien's funeral and her interment: "Plaintiff knows of one video that is either of the funeral or of the interment and is searching for the cassette."

Also on November 14, 2005, the date Plaintiff served its amended responses, Plaintiff served on Defendant a Privilege Log regarding one document, a video of the "[f]uneral or interment of Philomene Milien...." Plaintiff listed the "Party Authorizing Document/Party Receiving Document" as "Family member(s) of Philomene Milien." Plaintiff did not elaborate on his claim of privilege regarding that video, but instead wrote: "Plaintiff has conducted a thorough search and is claiming a recognized attorney client, work product, or other recognized privilege to the [video]...."

On November 17, 2005, Defendant's counsel sent an e-mail to Plaintiff's counsel in which Defendant's counsel wrote:

> I think we're entitled to the funeral video regardless of whether you expect to use it at trial. Please call me so we can discuss. Absent some incredibly persuasive argument on your end, or if there's something I don't know about this video that would change my thinking, we expect we'll be asking for an order compelling its production. Please take all steps necessary to preserve the video.

*See* Defendant's Motion to Compel Production of Funeral Video (D.E.# 36), at 3–4. Plaintiff's counsel, however, did not send a

were never married." October 17, 2005, re-

sponse to request for production no. 3.

responsive e-mail or call Defendant's counsel in response to the e-mail.[2]

On November 30, 2005, Defendant filed its Motion to Compel Production of Funeral Video. Defendant seeks production of a video of Ms. Milien's funeral or other information regarding the video. Defendant contends that the video is relevant to Ms. Milien's alleged death and likely is the best evidence regarding the question of whether she passed away.

On December 16, 2005, Plaintiff responded to the Motion to Compel and argued that: (1) "[t]he funeral/interment video at issue was created in anticipation of litigation" and therefore is subject to the work-product privilege; (2) Plaintiff has provided considerable proof of Ms. Milien's death, and therefore Defendant is merely conducting a "fishing expedition" to obtain cumulative evidence; and (3) "it has not be determined whether the video will be used in evidence at trial ...." D.E. # 40. In that Response, Plaintiff did not state that there was any question regarding the existence of the video. In fact, as discussed *supra,* Plaintiff explicitly wrote that "[t]he funeral/interment video at issue was created in anticipation of litigation." D.E. # 40, at 3.

Six days later, on December 22, 2005, Plaintiff amended its responses to Defendant's requests for production. Plaintiff again wrote that any photographs and videotapes of the funeral or interment are subject to the work-product privilege. Plaintiff also wrote: "Without waiving said objection, Plaintiff has made a thorough search for any and all videocassettes of the funeral and/or interment and was unable to locate any." That was the first time Plaintiff represented to Defendant that he had completed his search for the relevant video but had been unable to find it, and Plaintiff did not amend its response to the Motion to Compel to inform the Court of that fact.

On December 27, 2005, Defendant filed its Reply in support of its Motion to Compel. Defendant wrote, in part, that: (1) Plaintiff had made only conclusory statements regarding the work-product privilege but had not shown how the video was created in anticipation of litigation; (2) the mere, remote possibility of future litigation is insufficient to demonstrate that a video was created in anticipation of litigation; (3) a reasonable probability of litigation usually does not arise until an insurance company has made a decision with respect to the insured's claim, and that did not occur until almost two years after the video was made; (4) if the video were prepared in anticipation of litigation but Plaintiff cannot now find it (both of which Plaintiff had claim were true), then a strong inference arises that the video was intentionally destroyed or is intentionally being withheld; (6) Plaintiff should be required to submit an affidavit setting forth in detail (a) the chain of custody of the video (custodians and dates), (b) who commissioned the video (was it made commercially and, if so, who paid for it), (c) who actually took the video and why, (d) the steps, if any, taken by Plaintiff to preserve the video, and (e) the steps taken by Plaintiff to locate the video.

At the January 24, 2006, hearing regarding this matter, Plaintiff's counsel did not make any meritorious argument, and perhaps not even a non-frivolous argument, in support of his assertion of the work-product privilege regarding any videotape of the funeral or interment. Plaintiff's counsel attempted to explain the apparent discrepancies in Plaintiff's representations regarding the videotape by stating that Plaintiff had believed that a family member had videotaped the funeral, but that Plaintiff's questioning of his family members and the production of videotapes by family members had revealed that no such videotape exists today. Plaintiff represented that he has five videotapes which Plaintiff's family members produced, none of which contains video of the funeral or interment. (Plaintiff claims that those five videos are of events such as a Christening, a birthday, and a graduation.) The January 24 hearing was the first time Plaintiff informed either the Court or Defendant of the existence of those five videotapes. In response to the Court's question as to why Plaintiff's family members

---

**2.** Plaintiff did not dispute these facts in its Response to the Motion to Compel or at the January 24, 2006, hearing.

would have produced those videos in response to Plaintiff's request for videos of the funeral or interment, Plaintiff's counsel stated that Plaintiff's family members were unsure of the content of those videotapes because they lacked equipment to view them. (Plaintiff claims that he has had the videotapes' contents transferred to DVDs.) Plaintiff also stated that Defendant has unnecessarily involved the Court in matters which the parties could have resolved between themselves and that any attempt by Defendant to obtain evidence which might be pertinent to a motion for sanctions resulting from spoliation of the funeral or interment videotape would unnecessarily burden the Court.

As noted *supra,* Plaintiff's counsel has not made any tenable argument in support of his assertion of the work-product privilege regarding any videotape of the funeral or interment. Additionally, contrary to Plaintiff's assertion that he has provided considerable proof of Ms. Milien's death and therefore Defendant is merely conducting a "fishing expedition" to obtain cumulative evidence, substantial questions appear to exist as to whether Ms. Milien actually passed away, and a videotape (or other photographic or audio evidence) of the funeral or interment would certainly be relevant toward that question. In fact, a videotape might be the best evidence to determine whether Ms. Milien passed away or whether some type of fraudulent activity occurred. Also contrary to Plaintiff's assertions, if such a video exists, the fact that Plaintiff has not determined whether it will use the video at trial is irrelevant to the question of whether Defendant is entitled to discovery of the video.

Additionally, substantial questions exist regarding whether such a video or other recording of the funeral and/or interment ever existed. Plaintiff himself stated in his 1999 claim to Defendant, in his October and November, 2005, responses to Defendant's request for production, and in his Privilege Log that such a video existed; and even at the January 24, 2006, hearing, Plaintiff's counsel did not affirmatively represent that such a video *never* existed or, if such a video never existed, explain why Plaintiff mistakenly believed and represented to Defendant that one did exist.

In light of the circumstances outlined above, including Plaintiff's assertion of the work-product privilege regarding a videotape of the funeral or interment, Plaintiff has failed to adequately explain the circumstances which led to his earlier statements that a video of the funeral exists, and has failed to adequately explain the circumstances surrounding his alleged discovery that no such video exists. Several facts, including Plaintiff's counsel's failure to respond to Defendant's counsel's November 17, 2005, e-mail call into question Plaintiff's counsel's assertion, made at the January 24 hearing, that Defendant has unnecessarily involved the Court in matters which the parties could have resolved between themselves. Other facts—such as Plaintiff's counsel's failure to disclose the existence of five videotapes until the hearing, failure to disclose the circumstances surrounding Plaintiff's change in position regarding the existence of a videotape of the funeral, and assertion of the work-product privilege without presenting any tenable basis for doing so—also call into question Plaintiff's counsel's contention that Defendant or Defendant's counsel, as opposed to Plaintiff or Plaintiff's counsel, has taken actions which have unnecessarily multiplied the proceedings before this Court. Additionally, contrary to Plaintiff's contention that any attempt by Defendant to obtain evidence which might be pertinent to a motion for sanctions resulting from spoliation of the videotape would unnecessarily burden the Court, the facts of this case demonstrate that Defendant's counsel has at least the right, and perhaps even a duty to his client, to explore the possibility of a motion based on spoliation of evidence and/or misrepresentations by Plaintiff.

*Accordingly, it is*

ORDERED that Defendant's Motion to Compel Production of Funeral Video (D.E.# 36) is GRANTED as follows:

(1) On or before January 30, 2006, Plaintiff shall provide Defendants, at Plaintiff's expense, copies of the five DVDs which his counsel referenced at the January 24, 2006, hearing.

(2) On or before January 30, 2006, Plaintiff shall produce to Defendant all documents, photographs, videotapes, films, audiotapes, and/or any other visual and sound recordings referenced in Defendants' requests for production nos. 1 and 2.

(3) On or before January 30, 2006, Plaintiff shall provide an affidavit stating (a) whether any of the items referenced in the preceding paragraph have ever existed and (b) whether those items exist today. If any of those items have existed but do not exist today, Plaintiff shall state how he became aware of their prior existence and current non-existence, and shall provide any information he has regarding how and why the items were destroyed or lost and what efforts he made to secure and/or preserve those items. If any of those items do exist today, Plaintiff shall state how he became aware of their existence, who has custody of them, what efforts he has made to obtain them, and why he has been unable to obtain them.

(4) With regards to any video, photograph, or other audio or video recording of the funeral that has ever existed, on or before February 6, 2006, Plaintiff shall provide an affidavit or affidavits [3] setting forth in detail (a) the chain of custody of the video or other recording (including custodians and dates), (b) who commissioned the video or other recording (including whether it was made commercially and, if so, who paid for it), (c) who actually took the video or other recording and why, (d) the steps, if any, taken by Plaintiff to preserve the video or other recording, and (e) the steps taken by Plaintiff to locate the video or other recording.

(5) If no such video, photograph, or other video or audio recording exists or has ever existed, then on or before January 30, 2006, Plaintiff shall file an affidavit explaining *in detail* why he represented in his 1999 written statement, in his October and November, 2005, responses to the requests for production, and in his Privilege Log that such a video existed and why he no longer believes that such a video ever existed. Plaintiff is advised that misrepresentations to the Court could result in a recommendation that the Court impose sanctions against him, including dismissal with prejudice of Plaintiff's Complaint and the imposition of financial sanctions against Plaintiff.[4]

---

3. As Plaintiff's counsel recognized at the January 24 hearing, Plaintiff may have to obtain affidavits regarding these matters from individuals in Haiti. The Court recognizes that Plaintiff will not have much time to do so. However, Defendant is entitled to see such evidence prior to Plaintiff's deposition, which is scheduled for a date later in February of 2006, and this situation has come about because of Plaintiff's apparent change in position regarding the existence of a videotape and/or Plaintiff's assertion of a non-meritorious objection based on the work-product privilege.

In light of those facts, the Court is very unlikely to grant any request by Plaintiff to extend the deadlines set forth in this Order.

4. Depending on what occurs in this action—*e.g.*, whether Defendant files a spoliation motion—the Court may require further briefing and/or evidence from Plaintiff regarding his assertion that a videotape not only existed, but that it had been created *in anticipation of litigation*. Even if such a videotape existed, it is difficult to imagine how it could have been created in anticipation of litigation. If such a videotape never existed, however, it is difficult to imagine that Plaintiff could have had sufficient information to affirmatively state that such a tape had been created in anticipation of litigation.